COPY

Honorable A. C. Scott, Jr., Secretary
Brazos River Conservation and Reclamation
        District Power Committee
Temple, Texas

Dear Dr. Scott:                    Opinion No. 0-3178

                                   Re:  Contract for sale of elec-
                                        tricity by Brazos River
                                        Convservation and Reclama-
                                        tion District to the Brazos
                                        River Electric Transmission
                                        Cooperative, Inc.

        You have submitted for our consideration a draft
of the proposed contract for sale of electricity by the Brazos
River Conservation and Reclamation District to the Brazos
River Electric Transmission Cooperative, Inc., copy of which
is attached hereto. You have requested our opinion on the
following questions pertaining to this contract:

        "1. Does the Brazos River Conservation and
    Reclamation District have the power to enter into
    this contract?

        "2. Are the terms of the contract violative
    of the constitution or laws of the State of Texas?

        "3. When the contract is executed, will it
    be a valid binding obligation according to its terms?"

        The Brazos River Conservation and Reclamation District
was created and its powers defined by Acts 1929, 41st Leg., 2nd
C.S., Spec. L., p. 22, ch. 13, as amended. The constitution-
ality of the act creating the district has been established by
the Supreme Court of Texas in Brazos River Conservation and Re-
clamation District v. McCraw, 126 Tex. 506, 91 S.W. (2d) 665.
Section 3 of the Act prescribes the powers and purposes of the
district and subsection (1) thereof provides:

"For the control, storing and employment of
flood, storm and unappropriated flow waters in
the development and distribution of hydro-electric
power, where such use may be economically coordi-
nated with other and superior uses, and subordinated
to the uses declared by law to be superior." (em-
phasis ours)

As stated in our opinion No. O-2613:

"It`is familiar law that the grant of power to
a corporation, either private or public, to do
specific things or for specific purposes, carries
with it by implication the further power to do any
and all things whatsoever reasonably necessary to
the accomplishment of the major purposes enumerated."

It is our opinion that the power to sell electric
power is a necessary corollary to the power expressly granted
for "the development and distribution of hydro-electric power,"
and consequently, that the district has authority and power to
enter into the proposed contract for sale of electricity to
the Brazos River Electric Transmission Cooperative, Inc.

We have given careful consideration to the attached
draft of contract, and are of the opinion that the same is
valid under the Constitution and laws of Texas and that when
executed it will constitute a binding obligation as between
the parties thereto according to its terms.

You have further asked that we consider the proposed
amendment/to the contract as provided by the resolution of the
Board of Directors of the district dated February 17, 1941,
which amendment reads:

"That in the event there is located within the
Brazos River District any national defense project
the Brazos River Conservation and Reclamation Dis-
trict reserves the right to furnish electric energy
to said national defense project in the event the
Brazos River Electric Transmission Cooperative, Inc.,
does not furnish electric energy to said project in
ample quantities and amounts."

We find no vice in this amendment.

Although not within the scope of three questions submitted to us, we offer the following suggestions and observations relating to the draft of contract submitted to us.

The second paragraph of section 2 reads as follows:

"Beginning on the date of initial delivery and throughout the term of this contract, the District shall make available to the Purchaser, the output of its entire electric generating capacity at Possum Kingdom Dam and as set forth in Section 10."

Section 10 of the contract is entitled "Waiver of Default," Section 11 is entitled "Availability," wherefore we assume that the reference to "Section 10" in the above quoted paragraph of Section 2 should be changed to read "Section 11."

We understand the intent of the parties with reference to the above quoted paragraph of Section 2 to be that the district shall be free to sell, to other users, any excess power, over and above that which the Purchaser can use. Possible ambiguity may be avoided by adding an express clause to that effect.

The last sentence of the first paragraph of Section 22, reads: "As provided in Section 4 hereof, this total sum of money may be adjusted after January 1, 1945." It apparently should read, "Section 5 hereof."

Both Sections 5 and 22 of the contract refer to a redetermination in January, 1945, of the annual consideration of $203,925 provided in this contract; such reconsideration to be "on a basis of amortizing $4,000,000 over 50 years on a sinking fund basis." The contract appears nowhere to mention the interest rate upon which such a computation is to be made. Is it the intention of the parties that the present interest rate of the outstanding obligations of the District is to be used? In the event the district should refinance its presently outstanding bonds or should issue additional bonds bearing a different rate of interest, which rate shall be used to determine the "allowance for amortization?"

We raise these questions merely because they seem to us to indicate ambiguties in the contract which may be easily remedied at this time, but which might possibly give rise to costly litigation in the future.

We are returning to you herewith the draft of the contract which you left with us.

Yours very truly

ATTORNEY GENERAL OF TEXAS

WRL:db

By    s/   Walter R. Koch
                Assistant

Enclosures

APPROVED: OPINION COMMITTEE

APPROVED FEB 21, 1941

By    BWB    Chairman

s/ Gerald C. Mann

AT ORNEY GENERAL OF TEXAS